UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>MARK RICHARD LIPPOLD,<br><br>                         Debtor. | FOR PUBLICATION<br><br>Chapter 7<br><br>Case No. 11-12300 (MG) |

**MEMORANDUM OPINION AND ORDER DENYING MOTION FOR
RELIEF FROM THE AUTOMATIC STAY**

*A P P E A R A N C E S:*

SHELDON MAY & ASSOCIATES, P.C.
*Attorneys for U.S. Bank, N.A.*
255 Merrick Road
Rockville Centre, New York 11570
By:    Brian P. Nelson, Esq.

**MARTIN GLENN
UNITED STATES BANKRUPTCY JUDGE**

In this chapter 7 case of debtor Mark Richard Lippold (the "Debtor"), U.S. Bank National Association ("U.S. Bank"), as trustee, on behalf of the holders of the Asset Backed Securities Corporation Home Equity Loan Trust (the "Trust"), Series AEG 2006-HE1 Asset Backed Pass-Through Certificates, Series AEG 2006-HEI, moves to vacate the automatic stay pursuant to section 362(d)(2) of the Bankruptcy Code to permit it to proceed with foreclosure of the Debtor's primary residence (the "Property") located at 3171 Fairmont Avenue, Bronx, NY 10465 (the "Motion").[1] (ECF Doc. # 16.)

---

[1] As an initial matter, the identity of the movant is unclear. In the papers submitted with the Motion, the movant is referred to as either U.S. Bank *or* Select Portfolio Servicing, Inc. ("Select Portfolio Servicing")—U.S. Bank's servicer. For purposes of this Opinion, the Court shall refer to U.S. Bank as the movant. Even if Select Portfolio Servicing is the movant, it is well-established that a mortgage servicer has standing to seek relief from the automatic stay, *see, e.g.*, *In re Agard*, 444 B.R. 231, 235 n.1 (Bankr. E.D.N.Y. 2011) (citing cases), presuming, however, that the servicer is acting on behalf of a lender that has standing to seek stay relief. *Id.*

1

The issues discussed in this Opinion are neither novel nor complex, but highlight a well-publicized and persistent problem with inadequate mortgage foreclosure documentation. The failure to properly document the transfer of the note and mortgage raises the question whether the movant has standing to seek relief—here, an order vacating the automatic stay, but, if successful here, then a judgment of foreclosure in state court. Neither the Debtor's counsel nor the Chapter 7 trustee filed an objection to the Motion. But the lack of objection does not relieve U.S. Bank from the burden of establishing its right to relief. The Court denies the Motion because U.S. Bank has not established its standing for stay relief.

## BACKGROUND

On May 16, 2011, the Debtor filed a voluntary petition under chapter 7 of the Bankruptcy Code (the "Petition"). (ECF Doc. # 1.) The Debtor's schedules disclose $352,617.00 in assets and $708,237.75 in liabilities. Schedule D shows the Property is encumbered by two mortgages, aggregating $461,616.00. Schedule A values the Property at only $350,000.00, admitting the Debtor's lack of equity in the Property.[2] The Debtor's Statement of Intention states the Debtor's intent to pursue a loan modification with respect to the Property.[3]

Aegis Funding Corporation ("Aegis") was the original mortgage lender. The promissory note (the "Note") names Aegis as the lender. The accompanying mortgage (the "Mortgage") lists Mortgage Electronic Registration Systems, Inc. ("MERS") as the mortgagee solely in its

---

[2]    U.S. Bank's lift-stay worksheet (Motion Ex. E), *see* Local Rule 4001-1(c), lists the value of the Property as $450,000.00.

[3]    This case does not present the issue whether the same standing analysis should be applied if a debtor's stated intention is to surrender the property. In such a case the mortgagee can also pretermit the standing analysis with a stipulation to lift the stay with the debtor and any chapter 7 or 13 trustee.

The docket does *not* show that the Debtor ever sought to take advantage of this Court's Loss Mitigation Program. *See* SOUTHERN DISTRICT OF NEW YORK LOSS MITIGATION PROGRAM PROCEDURES (available at www.nysb.uscourts.gov).

2

capacity as "nominee" for Aegis and its successors in interest. (Motion Ex. B, at 3.) The Mortgage further provides that MERS "holds only legal title to the rights granted by [Debtor] in [the Mortgage,]" and that "[f]or purposes of recording [the Mortgage]," MERS is the "mortgagee of record." (*Id.* at 1, 3.) "MERS (as nominee for [Aegis] and [Aegis's] successors and successors and assigns) has the right:

> (A) to exercise any or all of those rights, including, but not limited to, the right to foreclose and sell the Property; and
>
> (B) to take any action required of [Aegis] including, but not limited to, releasing and canceling [the Mortgage]."

(*Id.* at 3.)

The Note provides for the Debtor to pay Aegis principal in the amount of $344,000.00 plus interest. (Motion Ex. A.) Unlike the Mortgage, however, Aegis did not confer any rights in MERS with respect to the Note. (*Id.*)

The Motion is supported by a Corporate Assignment of Mortgage (the "Assignment"), whereby MERS, "as nominee for [Aegis] its successors and assigns at c/o [Select Portfolio Servicing,]" assigned to U.S. Bank, in its capacity as trustee of the Trust,

> the said Mortgage together with other evidence of indebtedness, said Mortgage having an original principal sum of $344,000.00 with interest, secured thereby, together with all moneys now owing or that may hereafter become due or owing in respect thereof, and the full benefit of all powers and of all the covenants and provisos therein contained, and the said Assignor hereby grants and conveys onto [U.S. Bank], [MERS's] beneficial interest under the Mortgage.

(Motion Ex. C.)

The Assignment from MERS to U.S. Bank purports to transfer MERS's rights in the Note; but it does not answer the question of what, if any, rights MERS has in the Note. At an August 30, 2011 hearing on the Motion (the "Hearing"), U.S. Bank's counsel acknowledged that

3

other than the Assignment, the record contains no evidence of U.S. Bank's purported ownership of the Note.

### DISCUSSION

**A. U.S. Bank is Not a "Party in Interest" Under 11 U.S.C. § 362(d)(2)**

Section 362(a) of the Bankruptcy Code provides an automatic stay on all litigation against the Debtor, as well as "any act to create, perfect, or enforce any lien against property of the estate." 11 U.S.C. § 362(a). Under section 362(d)(2) of the Bankruptcy Code—the operative provision relied on by U.S. Bank in seeking relief—"[o]n request of a *party in interest* . . . the court shall grant relief from the stay . . . if–(A) the debtor does not have an equity in such property; and (B) such property is not necessary to an effective reorganization." 11 U.S.C. § 362(d)(2) (emphasis added).

In *In re Mims*, 438 B.R. 52, 55 (Bankr. S.D.N.Y. 2010), this Court explained that the term "party in interest" is not defined in the Bankruptcy Code. Under Second Circuit law, however, "in order to invoke the court's jurisdiction to obtain relief from the automatic stay, the moving party [must] be either a creditor or a debtor." *Id.* (citing *In re Comcoach*, 698 F.2d 571, 573 (2d Cir. 1983)); *see also Agard*, 444 B.R. at 245. It follows that U.S. Bank must be a "creditor" to seek relief from the automatic stay.[4] *Mims*, 438 B.R. at 55.

Section 101(10) of the Bankruptcy Code defines a "creditor," in part, as an "entity that has a *claim* against the debtor that arose at the time of or before the order for relief concerning the debtor." 11 U.S.C. § 101(10)(A) (emphasis added). A "claim" is a "*right to payment*, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, legal, equitable, secured or unsecured." *Id.* § 101(5)(A) (emphasis added).

---

[4]    A creditor's authorized agent, such as a loan servicer, may also seek stay relief. *See supra* n.1.

4

Despite the Bankruptcy Code's broad definition of a "claim," U.S. Bank "has not demonstrated its 'right to payment' because . . . it lacks the ability to seek the state law remedy of foreclosure." *Mims*, 438 B.R. at 56 (citing *Johnson v. Home State Bank*, 501 U.S. 78, 81 (1991) (finding that a mortgage foreclosure was a "right to payment" against the debtor)).

### B.  U.S. Bank Lacks Standing to Foreclose on the Property

"Standing is a threshold issue for a court to resolve." *Agard*, 444 B.R. at 245. State law governs the determination of property rights in a bankruptcy proceeding. *See Butner v. United States*, 440 U.S. 48, 54 (1979) (noting that absent an actual conflict with federal bankruptcy law, Congress "has generally left the determination of property rights in the assets of a bankrupt's estate to state law"); *In re Morton*, 866 F.2d 561, 563 (2d Cir. 1989). Under New York law, a plaintiff has standing to commence a mortgage foreclosure action "where it is both the holder or assignee of the subject mortgage and the holder or assignee of the underlying note at the time the action is commenced." *Bank of N.Y. v. Silverberg*, 926 N.Y.S.2d 532, 536 (2d Dept. 2011) (citing cases). "[F]oreclosure of a mortgage may not be brought by one who has no title to it and absent transfer of the debt, the assignment of the mortgage is a nullity." *Kluge v. Fugazy*, 145 A.D.2d 537, 538 (2d Dept. 1988) (citing cases); *see also HSBC Bank USA, Nat. Ass'n v. Miller*, 26 Misc.3d 407, 411–12 (N.Y. Sup. Ct., Sullivan County 2009).

While the transfer of the mortgage without the promissory note is a nullity, once a promissory note is transferred from assignor to assignee, "the mortgage passes as an incident to the note." *Id.* at 537; *see also In re Escobar*, Nos. 11-71114-ast, 11-71135-ast, 2011 WL 3667550, at *9 (Bankr. E.D.N.Y. Aug. 22, 2011) (Trust, J.). An assignment of the note and mortgage can be effectuated by a written instrument *or* by physical transfer of the instrument from assignor to assignee. *Mims*, 438 B.R. at 56. In *Mims*, this Court held that the movant,

5

Wells Fargo Bank, N.A. ("Wells Fargo"), failed to supply proof that it was the owner of a promissory note given as part of a home mortgage loan. *Id.* Wells Fargo could not show that the note was either physically delivered or assigned pursuant to a written agreement. *Id.* Wells Fargo supported its motion with a written assignment, but the document only assigned the mortgage, not the underlying debt. *Id.* at 56–57. Stay relief was denied—since Wells Fargo failed to prove it owned the note, it "failed to establish that it [had] standing to pursue its state law remedies with regard to the Mortgage and Property." *Id.* at 57; *see also Escobar*, 2011 WL 3667550, at *8 ("[A] note or mortgage assignee must demonstrate rights to proceed *under state law* as against the property at issue to have bankruptcy standing.") (emphasis added).

Furthermore, the facts of this case are remarkably similar to two cases decided after *Mims*. In *Agard*, U.S. Bank, through its servicer, moved for relief from the automatic stay. 444 B.R. at 237. U.S. Bank submitted (i) a note executed by the debtor as borrower, and First Franklin, a Division of Na. City Bank of In. ("First Franklin"), as lender, and (ii) a mortgage executed by the debtor listing First Franklin as lender, and MERS as nominee for First Franklin and its successors and assigns. *Id*. While MERS was named as a party to the mortgage, it was not a party to the note. *Id.* at 246. U.S. Bank supplied an assignment of mortgage listing MERS as nominee for First Franklin, as assignor, and U.S. Bank, in its capacity as trustee for a mortgage loan trust, as assignee. *Id.* Judge Grossman found that U.S. Bank failed to meet its burden of showing that it was the holder of the note by an assignment from First Franklin: MERS was "not a party to the Note" and no evidence was produced demonstrating MERS's "authority to take any action with respect to the Note." *Id.* at 246. Moreover, U.S. Bank did not establish that it retained physical possession of the note to evidence a valid transfer.[5] *Id.*

---

[5]    The *Agard* court nevertheless granted U.S. Bank's motion to vacate the automatic stay—the court held that the *Rooker-Feldman* doctrine applied, barring the debtor's challenge to U.S. Bank's standing, because of an earlier

More recently, in *Silverberg*, the Appellate Division for the Second Department held that since MERS was not the lawful holder of notes identified in a mortgage and note consolidation agreement, MERS did not have the authority to assign the power to foreclose. 926 N.Y.S.2d at 538. The borrowers had entered into two loan agreements with Countrywide Home Loans, Inc. ("Countrywide") to purchase residential real property—each loan included a promissory note and a mortgage securing the borrowers' obligations under the note. *Id.* at 533–34. The borrowers subsequently executed a consolidation agreement, merging the two notes and mortgages into one obligation in favor of MERS, as mortgagee and nominee of Countrywide. *Id.* at 534. But Countrywide alone was the named lender and note holder. *Id.* The consolidation agreement recited that MERS was "acting solely as a nominee for [Countrywide] and [Countrywide's] successors and assigns . . . . For purposes of recording this agreement, MERS is the mortgagee of record." *Id.* Countrywide was not a party to the consolidation agreement. *Id.* Several months later, MERS, as Countrywide's nominee, assigned the consolidation agreement to the Bank of New York. *Id.* When the borrowers defaulted, the Bank of New York commenced a foreclosure action in state court. *Id.* On appeal, the Second Department concluded that while the consolidation agreement gave MERS the right to assign the mortgages, it did not give MERS the authority to transfer the underlying notes. *Id.* at 538. MERS's authority, as "nominee," was "limited to only those powers which were specifically conferred to it and authorized by the lender." *Id.* Since MERS could not transfer the notes, any such assignment exceeded MERS's authority as the lender's nominee.[6] *Id.*

---

state court determination that U.S. Bank was a secured creditor. 44 B.R. at 233–34. But Judge Grossman concluded "in all future cases which involve MERS, the moving party must show that it validly holds both the mortgage and the underlying note in order to prove standing before this Court." *Id.* at 254.

[6]    In *In re Veal*, 450 B.R. 897 (9th Cir. B.A.P. 2011), the court's ruling substantially mirrors this Court's ruling in *Mims* as well as the legal principles stated in *Agard* and *Silverberg*—namely, that in order to have standing to obtain stay relief, the moving party must establish ownership or an interest in the note. *Id.* at 917. The Ninth

In this case, the Mortgage transferred "those rights that are stated in [the Mortgage]" to MERS, solely as Aegis's nominee, so that "MERS [holds] only legal title to the rights granted by [Debtor] in [the Mortgage]." (Motion Ex. B, at 3.) According to the Mortgage, MERS is the "mortgagee of record[,]" and has the right, *inter alia*, to foreclose on the Property. (*Id.* at 1, 3). This language mirrors the terms of the consolidation agreement in *Silverberg*. At the Hearing, U.S. Bank's counsel conceded that the facts of this case were "on all fours" with *Silverberg*.

The language of the Assignment in this case purports to transfer both the Mortgage and the Note to U.S. Bank. But MERS, as the purported assignor, could not legally assign the Note; it *only* had legal rights with respect to the Mortgage. Aegis did not confer any rights on MERS in the Note—MERS is *not* a party to the Note nor is there any indication that MERS was authorized to take any action with respect to the Note. *See Agard*, 444 B.R. at 246. Thus, "assignment of the note[] [is] . . . beyond MERS's authority as nominee or agent of the lender." *Silverberg*, 926 N.Y.S.2d at 538. There is also no evidence in the record showing that U.S. Bank received physical delivery of the Note, or that U.S. Bank is in possession of the Note. Since U.S. Bank failed to "provide satisfactory proof of its status as the owner or holder of the note at

---

Circuit Bankruptcy Appellate Panel addressed whether the party seeking stay relief "established its standing as a real party in interest to pursue [relief from the automatic stay]." *Id.* at 902. The *Veal* court stated "a party seeking stay relief need only establish that it has a colorable claim to enforce a right against property of the estate." *Id.* at 914–15. In order to show a "colorable claim" against the property, the movant "had to show that it had some interest in the Note, either as a holder, as some other 'person entitled to enforce [under applicable UCC Art. 3 law],' or that it was someone who held some ownership or other interest in the Note." *Id.* at 917. The court concluded that the movant lacked standing because:

> without any evidence tending to show it was a 'person entitled to enforce' the Note, or that it has an interest in the Note, [the movant] has shown no right to enforce the Mortgage securing the Note. Without these rights, [the movant] cannot make the threshold showing of a colorable claim to the Property that would give it prudential standing to seek stay relief or to qualify as a real party in interest.

*Id.* at 918.

issue," *see Escobar*, 2011 WL 3667550, at *9, the Court concludes that U.S. Bank does not have standing to obtain stay relief.[7]

## CONCLUSION

For the reasons explained above, U.S. Bank's motion to lift the automatic stay is denied without prejudice.

**IT IS SO ORDERED**

Dated:  September 6, 2011
        New York, New York

                                                    /s/Martin Glenn
                                                MARTIN GLENN
                                        United States Bankruptcy Judge

---

[7]    U.S. Bank cannot argue that it has standing because the Mortgage states that MERS is the mortgagee of record for purposes of recording. (Motion Ex. B, at 1.) The *Silverberg* court rejected that very same argument—such language "cannot overcome the requirement that the foreclosing party be both the holder or assignee of the subject mortgage, and the holder or assignee of the underlying note, at the time the action is commenced." *Silverberg*, 926 N.Y.S.2d at 539. Also, since U.S. Bank offered *no* evidence that it owns any interest in the Note, by assignment, transfer or delivery, this case does not present the issue discussed in *Escobar*, 2011 WL 3667550, at *7, about the evidentiary threshold for lifting the automatic stay, leaving the issue for state court whether the evidence is sufficient to support granting a foreclosure judgment.

9